*Court of Sessions, July Term,* 1823.

The People
        *vs.*            } *Libel.*†
Samuel B. H. Judah.

*Maxwell, District Attorney, and Wm. M. Price,* Counsel for the People.
*Van Wyck, Fay, and Bogardus,* Counsel for the Defendant.

Postponment of trial when and for what causes will be granted.

*Maxwell* moved the cause for trial.

Van Wyck presented and read an affidavit to the court, stating that he had reason to believe that he could not, owing to an excitement of the public mind in this city, have at present a fair trial, and, therefore, by his counsel, moved for a postponment of the cause ; and in his behalf, stated, that application had been made to the Recorder for a *certiorari* to the Supreme Court, for the purpose of trying the case by a jury in another county. That request has been denied.    The present application was for a continuance of the cause to the next term, for two purposes, both of which were met by the affidavit.— The first was to give time to the defendant to make application to the Supreme Court to grant the *certiorari,* which the Recorder had refused ; and the second was, to enable the defendant, even if the Supreme Court should refuse the *certiorari,* to obtain the benefit of a subsidence of that excitement of which he now explained.    To prove the existence of such excitement, Mr. Van Wyck read an extract from Lang's N. Y. Gazette, published a few days ago, expressing " great satisfaction that the grand jury had found a bill of indictment against the author of a scurrilous little book entitled Gotham and the Gothamites."

† The editor is principally indebted to the kindness of Mr. Clark for this case.

Mr. *Price*, for the prosecution, opposed the motion, and cited the case of Hettick ; a case he said, more deeply interesting than the present, and which was made more generally and more freely the subject of newspaper discussion. It did not comport with the principles or furtherance of public justice, that its course should be impeded by newspaper paragraphs. If editors unwarrantably interfere, they are liable to punishment; but if the principle contended for should prevail, the libeller himself might procure delay by inserting in a newspaper, paragraphs calculated to excite the public mind. Excitement will always more or less exist, where an offence has been committed of a character to awaken it; but he contended, that in the present case it was only directed (as it should be) towards the offence, and not towards the offender; nor was it pretended, in the affidavit itself, that the excitement was personal against the defendant. The court was now called upon to establish a rule. The affidavit would be filed with the records of the court, and the decision upon it would be made use of as a precedent.

Mr. *Maxwell, District Attorney*, observed, that nothing had transpired to show that such a degree of excitement existed as would preclude the defendant from the benefit of a fair trial. He has an equal privilege with all other citizens. He can challenge any juror on the pannel who may have been so influenced or excited as to form an opinion in the case. It has been already decided by the Recorder, that there is no sufficient ground for carrying up the cause by a certiorari. Shall the trial, then, be further delayed? It had been urged by the counsel that they had not sufficient time for prepa-

NEW-YORK, ration.    But what preparation could be necessary?—
There was no pretence of justification, and no question
of law to be discussed.  It was a mere question of fact
for the jury to try, and that question could hardly be said
to exist, for it is acknowledged under the hand and seal of
the defendant, that he is the author of the publication.

Mr. Bogardus, for the defendant, was willing that the
decision of the court, now to be made, should be used as
a precedent on all future occasions of a similar kind, and
for that very reason he was anxious that the decision
should be a correct one.    The case of Hettick, which
had been cited, he was not particularly acquainted with,
but he felt authorized to say it was unlike the present.—
No inconvenience could result from granting the motion,
and to the defendant it was deemed important.  A de-
gree of excitement prevailed which was incompatible
with a fair and impartial trial, and from whatever cause
it might be derived, the effect must be equally pernicious.
The influence of newspaper publications had been threat-
ed as unimportant.   He did not so regard them.   It
must be acknowledged for a fact, that editors do con-
trol the public mind, and give direction to public opin-
ion.   Their sentiments have influence with their read-
ers, and it is useless to disguise, that credit is given al-
most implicitly to their assertions.    The whole mass of
the community is affected by them ; and are we to ex-
pect that the jury will not be insensibly biased by them
also ?   The objection that the defendant might write an
exciting paragraph against himself, he thought too far-
fetched, and too much removed from probability to re-
quire refutation.    Again, it has been said that it was

a mere question of fact that the jury was to try.    This
was a sort of argument which it was difficult to reply to;
but the inference sought for seemed to be, that as it was
only a question of fact to decide, it became a matter of
no consequence whether the jury to try that question
were partial or impartial !    But why should it be neces-
say to press on this trial?    The defendant was indict-
ed but a few days ago—the book has disappeared from
circulation, and no important reason seems to exist why
it should be now urged on for trial.    Our application,
said Mr. B., is not an extraordinary one.   The defend-
ant is indicted for disturbing one of the worst hornets'
nests (editors of newspapers) that hang around this city.
He has also disturbed the tribe of authors and the theatri-
cal corps, and for these offences he is pressed on to a pre-
mature trial.

Mr. Fay, counsel for the accused, who followed on
the same side, recapitulated the facts, and enforced the
arguments that had been adduced in favor of the pro-
posed continuance.   He contended that it was impossi-
ble to have a fair trial at this term ; the court would grant
time for the purpose of enabling the defendant to apply
to the Supreme Court ; that this case had no analogy to
Hettick's case, that was for a felony—for stealing a large
sum of money.   The excitement against Mr. Judah was
personal, and was not confined to the book ; it was at
every corner—in the taverns—at the public places, and
the police office.   The excitement had become so general
and so heated that the defendant was obliged to secret
himself; and a fair and impartial trial under these circum-
stances could not be had, &c.

NEW-YORK.　　　　The Recorder delivered the opinion of the court, and observed, that the application had been made to him at chambers, under his *ex officio* commission, for a *certiorari*. He had refused it on the ground that the sovereign of a country, who is considered as the fountain of justice, has a right to select the tribunal by which offences shall be tried ; and as the people are, in this country, sovereign, they, by the district attorney, have the same right. Judge Blackstone, in his Commentaries says, that a *certiorari* may be granted at the instance of either the prosecutor or the defendant; the former as a matter of right, the latter as a matter of discretion ; and therefore it is seldom granted to remove indictments from the justices of jail delivery, or after issue joined, or confession of the fact in any of the courts below. In cases of felony it has been settled by the Supreme Court, that unless in great and peculiar causes, a *certiorari* shall not be granted ; and although in the case of Hettick, which had been alluded to, it had been granted by Judge Platt, yet the decision was overruled by the Supreme Court, and the case remanded to this court for trial. If such was the law in felonies, the reason of the rule was still stronger in misdemeanors ; for it would be monstrously inconvenient if every case of misdemeanor was liable to be transferred form its appropriate jurisdiction. There were some cases in which indeed, it seemed to be necessary, and the case of Parker, alias Hoag, was cited ; but nothing appeared before the court to convince them that a jury could no be found in this city, at this time, by whom the defendant could have a fair and impartial trial.* The court, therefore, did not think the apprehension well founded ; yet, as the counsel for the defendant

4 Bl. Com. 321. 2 Hawk. P. C. 287. 4 Burr. 749. Goodwin's case. 18 Johns Rep. 187.

5 City Hall Rec. 124.

adhered to the idea of excitement, and as the time asked
for was but a few days, the court had unanimously decid-
ed to grant it.

The counsel for the accused were directed to give no-
tice to the district attorney of their application to the Su-
preme Court for a *certiorari*, and the case was postponed
to the fourth day of the sitting in August term.

### *Philadelphia Mayor's Court, June Term*, 1823.

The Commonwealth,  
      *vs.*     } *Passing counterfeit money.*  
Ann Carson.    

Ann Carson was arraigned, tried, and convicted in the Mayor's Court
of the city of Philadelphia, for June Term, 1823, for passing
counterfeit notes of the Bank of Stephen Girard, in that city.

She applied by her Counsel, Z. Phillips, Esq. for a postponement of her
trial to the next Term of the Court, on two grounds : the first
was for the indisposition of the prisoner herself, and the ab-
sence of material witnesses, and filed an affidavit in the usual
form.

The second was on account of popular excitement ; the affidavit stating
the excitement is singular, and is in the following words :

"COMMONWEALTH *vs.* ANN CARSON.

"Mayor's Court, June, 1823.

The defendant being sworn saith, in addition to her former affidavit for
postponement of her trial, that she verily believes she cannot,
at this time, procure a fair and impartial trial, in consequence
of the excitement of the public mind, which, as she verily be-
lieves, has been occasioned by certain publications in the news-

NEW-YORK, paper called the Democratic. Press, edited by John Binns, one of the Aldermen of the city of Philadelphia, and, as such one of the judges of this Court: That she has not been able to procure a file of the papers, for the inspection of the Court, but presumes Alderman Binns will lend his file to the Court for their inspection: That one of the pieces is headed, "As we expected:" That by their publication the public mind has been inflamed, and sufficient time has not elapsed for the fervor to have abated, so as to afford a fair and impartial trial.

· "ANN CARSON.

Sworn to in open court, the second day of July, 1823.

"Lewis E. Wells, *Pro. Clerk.*"

The Hon. Joseph Reed, Recorder, overruled the application to put off the trial, on both affidavits. He observed, in relation to the last, that there was no doubt the prisoner would have a fair trial. If the excitement was no more than the natural consequence of the criminal conduct, and notorious bad character of the prisoner, public sentiment was to be expected, and could not be avoided, in such cases: That popular excitement was, no doubt, against her. She had been known to the Court and to the public, by a long course of vice and crime; and that if the trial could be delayed, on the ground of public prejudice, every notorious and hardened offender, whose crimes had excited the indignation of the community, would have a right to demand a postponement of their trial. Such a state of public feeling, it was obvious, was not *public excitement*, within the legal meaning of the words; it was a fair expression of public sentiment.

The Counsel for the prisoner abandoned her defence. A plea of not guilty was entered under the act of assembly

· of the state and the trial proceeded. She was convicted, and was sentenced to the State Prison. The indictment was found, and the trial took place the first term after the felony committed, and the first term after the charge and arrest made.

I am not certain that this case is entitled to any authority, notwithstanding the great experience of the Judge, who presided at the trial.

*First.* Because I am not certain of the accuracy of the case, although I have two anonymous reports of it, and the above is the substance of them.

*Secondly.* Because it is an extreme case.

The prisoner had been so long before the public charged with high crimes, and was known to every ·one to be a woman of very extraordinary powers, which were exerted in the commission of crimes and offences, as various as the mind of a wicked woman could devise, and a set of desperate associates to execute, that public justice seemed to demand a course of proceeding out of the common order. For in common cases, an application supported by the first affidavit read in this case, would be considered sufficient with respect to the second affidavit, the exceptionable manner in which it was worded would seem to imply that but little attention was, or ought to have been paid to it.

In this city, where the court sits for the trial of criminal Ante, p. 30, 72. cases every month, it is customary to postpone the trial to the next term, merely on the *application of the prisoner*, stating that he is not ready for trial. In other cases, the court will require *an affidavit of the absence of material witnesses;* and in *suspicious* cases they will compel the

..NEW YORK, prisoner *to show how his absent witness is material.* The Court no doubt, have a sound discretion in granting and refusing applications of this nature, which is exercised upon a view of all the circumstances of the case, to further the ends of justice, and secure a fair and impartial trial.